IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05cv1010-CSC |
| | ) | (WO) |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  Introduction**

On June 29, 2001, plaintiff Patricia Barnes ("Barnes") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq., and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability.  Her initial application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  The administrative hearing was held on July 31, 2002.  (R. 262).  On May 26, 2003, the ALJ denied the claim.  Barnes appealed the ALJ's decision to the Appeals Council.

While her appeal was pending at the Appeals Council, the plaintiff filed another application for benefits on June 26, 2003.  This application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an ALJ.  An administrative hearing was held on July 20, 2004.  (R. 305).  On December 8, 2004, the ALJ

denied this claim. Barnes also appealed this decision to the Appeals Council.

On August 23, 2005, the Appeals Council rejected both requests for review. The ALJs' decisions consequently became the final decisions of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.**  The plaintiff was 47 years old at the time of the most recent decision by an ALJ.  (R. 16).  She has a high school education. (*Id.*).  Her prior work experience includes work as dietary aide and nursing home attendant. (R. 16-17). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of diabetes mellitus with peripheral neuropathy, cataracts and bilateral shoulder arthritis.  (R. 21).  The ALJ also concluded that she has impairments that "could reasonably be expected to give rise to mild to moderate pain."  (*Id.*)  The ALJ further concluded that "[t]he medical evidence of record does not indicate that she has experienced significant change in her medical condition since the prior unfavorable Administrative Law Judge decision issued on May 26, 2003." (*Id.*). Nonetheless, the ALJ concluded that the plaintiff has the residual functional capacity to perform sedentary work and that she could not perform her past relevant work.  (R. 21-22). Relying solely on the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, the ALJ concluded that there was a significant number of jobs in the national economy that the plaintiff could perform.  (R. 2-23).  Therefore, the ALJ concluded that the plaintiff was not disabled.  (R. 23).

**B. Plaintiff's Claims.**  The plaintiff presents five issues for the Court's review.  As stated by the plaintiff, the issues are as follows.

 1.     Whether the transcript of Ms. Barnes['] file is incomplete.

 2.     Whether the ALJ erred as a matter of law by failing to properly evaluate Ms.

4

Barnes['] visual impairments at or beyond step two of the sequential evaluation process.

      3.     Whether the ALJ failed to properly evaluate the opinion of Dr. Parker, a consultative examiner.

      4.     Whether the second claim's (sic) hearing should have been deferred until the Appeals Council made a decision on the first claim.

      5.     Whether the ALJ erred as a matter of law by relying solely on the medical vocational guidelines in the presence of severe, non-exertional limitations.

(Pl's Br. at 1-2).

## IV. Discussion

The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must consider every impairment alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe - either singly or in combination - to create a disability. *See Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986). All of the plaintiff's impairments must be considered in combination even when the impairments considered separately are not severe. *Hudson v. Heckler,* 755 F.2d 781, 785 (11th Cir. 1985). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 735, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Id*.

"Failure to do so requires the case be vacated and remanded for the proper consideration." *Hudson,* 755 F.2d at 785.

## A. Procedural Claims

For the sake of simplicity and fluidity, the court will separate the plaintiff's procedural claims from her substantive claims. Barnes contends that the transcript of the administrative proceedings submitted by the Commissioner in this case was incomplete. She further contends that the ALJ should have deferred the administrative hearing on her second application for benefits because her first application was pending at the Appeals Council.

The Commissioner has filed a supplemental transcript completing the record in this case. *See* Doc. # 17. In her reply brief, the plaintiff contends that the ALJ

> said he integrated Ms. Barnes['] two files. (R. 266) The ALJ was asked, "did they also send the medical exhibits" (R. 267). Yet, no prior evidence was included on the List of Exhibits (R. 337). . . . The ALJ's failure to include this evidence in the file is reversible error.

(Pl's Reply Br. at 4).

First, the plaintiff's argument is a blatant misrepresentation of the colloquy between counsel and the ALJ.

> ATTY: And then, you know, her first Application was January the 14th, 1999. It was initially denied on April of '99 and I have not seen those Applications or looked at those Applications so I'm not sure when she alleged the onset date of those. But she told me that she has not worked since 1998 so we would like to consider reopening.
>
> ALJ: All right.
>
> ATTY: And there is no medical evidence or not sufficient medical

|   |   |
|---|---|
| | evidence right now during those periods of time to prove her disability in the record, in this record. The prior files were not requested, apparently, from my view just a few minutes ago of the file. |
| ALJ: | Well, it appears that the SSI prior file arrived. It was integrated in the current file. |
| ATTY: | Okay. Then I was mistaken on that. |
| ALJ: | And were you able to see those old SSI Applications? |
| ATTY: | I did not look at those. I looked primarily to the DIB so naturally I only had a few minutes to look over that. We have not had someone in the Mobile office that could copy. I have since found somebody that can copy the full file for me so I'll have those in advance of hearing in the future. |

. . .

|   |   |
|---|---|
| ATTY: | *When they sent the other SSI file, did they also send the medical exhibits with that?* |
| ALJ: | *It's customary for the whole file to arrive and then it would be put in the "F" section.* |
| ATTY: | *I'm showing from what I received on the "F" exhibit, that there's no documentation between May the 9th of 1997 through April of 2000.* And in order to prove her disability back during that time, it would be crucial that we have medical evidence during that period of time. And I think one of the problems also, she's being treated by Family Practices and they have several different locations and she's been seen at several different locations. Family Practices in Ashford, Family Practices here and First-Med here, which are all affiliated. But they will not send – if you send one request, they don't combine all the records and send you records from all the different locations. |
| ALJ: | You have to request them directly from each location? |
| ATTY: | From each location. |

7

(R. 265-267) (emphasis added).  The plaintiff asks this court to assume from this colloquy that the ALJ affirmatively stated that there were medical exhibits in Barnes' earlier files and then make the analytical leap that this evidence was not submitted to this court.  The plaintiff's entire argument rests solely on this assumption which is purely speculative, particularly in light of the entire colloquy.  Moreover, it is apparent from the colloquy that counsel lacked sufficient knowledge of the prior files to affirmatively state what was or was not contained within those files.  More importantly, however, the plaintiff has failed to demonstrate that she has suffered any prejudice nor has she asserted how this evidence would have changed the ALJ's determination based on the evidence that is in the record.  Consequently, she is entitled to no relief on this basis.

Next, the plaintiff contends that the ALJ should have deferred the administrative hearing on her second application for benefits because her first application was pending at the Appeals Council.  This claim borders on the frivolous in light of counsel's agreement at the hearing to go forward with the hearing.  (R. 308).  Consequently, she is entitled to no relief on this basis.

Nonetheless, the court concludes that a remand is necessary because the ALJ erred as a matter of law.

### B. Substantive Claims

**1.     Whether the ALJ failed to properly evaluate the plaintiff's visual**

**impairments.**[4]  The medical records clearly demonstrate that the plaintiff suffers from diabetes mellitus, type I.  (R. 125, 129, 133-34, 139, 141, 143, 162-65, 167, 169-71, 173-75, 177, 214, 223).  At times, her diabetes has been poorly controlled.  (R. 125, 133, 164, 169, 173-75, 223).  On February 20, 1997, Barnes saw Dr. Dean.  (R. 125).  At that time, Dr. Dean noted that Barnes had a history of diabetes and she had not been compliant in that she had not been to diabetes classes or to see an ophthalmologist.  (*Id*.)

On April 5, 1999, Barnes underwent a consultative physical examination at the behest of the Social Security Administration.  (R. 134).  At that time, her vision was reported as:

| | |
|---|---|
| Near vision without glasses | 20/20 in right, left and both eyes |
| Far vision without glasses | 20/50 in right and left eye |
| | 20/40 in both eyes |

(R. 135).

On December 3, 1999, Barnes underwent another consultative examination, again at the request of the Social Security Administration.  (R. 139).  At that time, her uncorrected vision was recorded as follows:

| | |
|---|---|
| Near vision | 20/100 in right, left and both eyes |
| Far vision | 20/100 in right eye |
| | 20/70 in left and both eyes |

(R. 140).

On November 8, 2002, Barnes was evaluated by Dr. Buren Wells.  At that time, she

---

[4] Because the court concludes that the ALJ erred as a matter of law at step two of the sequential analysis, the court pretermits discussion of the plaintiff's third issue about whether the ALJ failed to properly evaluate the opinion of the consultative examiner.

9

indicated that she was having "blurred vision for approximately 1-2 years." (R. 214). Her vision at that time was recorded as:

| | |
|---|---|
| Near vision without glasses | 20/80 in right, left and both eyes |
| Far vision without glasses | 20/70 in right eye |
| | 20/50 in left and both eyes |
| | 20/80 in both eyes |

(R. 215). Although her eyes reacted to light, the "[o]phthalmoscopic examination of both eyes is unsatisfactory. There is opacification of both lens." (*Id*.) Dr. Wells diagnosed Barnes as suffering from diabetes mellitus, insulin dependent, as well as bilateral cataracts with diminished vision. (R. 216).

On August 13, 2003, Barnes underwent a third consultative examination. At that time, her uncorrected vision was 20/100. (R. 186). The report does not indicate what her corrected vision measured. (*Id*.)

On October 10, 2003, Barnes had a visual examination at the Southeast Eye Clinic. (R. 191-92). At that time, her vision was detailed as follows:

| | | | |
|---|---|---|---|
| Distance | without glasses | both eyes: | 20/70 |
| | corrected | right eye: | 20/40+ |
| | | left eye: | 20/30 |
| | | | |
| Reading or | without glasses | right eye: | 20/400 |
| Close work | | left eye: | 20/200 |

(R. 191). The report also indicated that Barnes does not have "useful binocular vision in all directions – with glasses." (*Id.*). The Fundus examination indicated "[e]arly background diabetic retinopathy." (R. 192). The examination also revealed cataracts. (*Id*.) Barnes

10

reported that she could "not see to read newspaper or phone book." (R. 194). Inexplicably, the examiner noted "no visual disability." (R. 192).

At the administrative hearing in 2002, Barnes testified that although she has been referred to an eye doctor by her primary care physician, she is unable to afford to go. (R. 285). She also testified that her eyes have deteriorated over several years and she can no longer read "the phone book or small letters or stuff like that." (*Id.*)

Diabetic retinopathy and cataracts are two complications from diabetes. ROSCOE N. GRAY, M.D., ATTORNEYS' TEXTBOOK OF MEDICINE, ¶ 74.96 (3rd ed. 2004). The first stage of diabetic retinopathy is background or nonproliferative retinopathy. *Id.* at ¶ 74.96(1). Cataracts can develop rapidly in persons suffering from diabetes. *Id.* at ¶ 74.96(2). Both ALJs concluded that the plaintiff's diabetes mellitus was a severe impairment. (R. 21 & 47). In addition, one ALJ concluded that Barnes also suffers from severe impairments of cataracts and peripheral neuropathy. (R. 21). Nonetheless, neither ALJ considered the effect of her cataracts or diminished vision on her ability to work. The record clearly demonstrates that the plaintiff's vision is rapidly deteriorating. In April 1999, Barnes' vision was 20/50 in each eye. (R. 135). Eight months later, her vision was 20/100 in each eye. (R. 140). In November 2002, Dr. Wells noted that his "[o]phthalmoscopic examination of both eyes in unsatisfactory. There is opacification in both lens." (R. 215). Dr. Wells diagnosed Barnes with cataracts and diminished vision. (R. 216). In October 2003, Barnes underwent a visual examination at the request of the Commissioner. That examination revealed "[e]arly background diabetic retinopathy" and cataracts. (R. 192). She did not have "useful

binocular vision in all directions – with glasses." (R. 191).

Despite this evidence, neither ALJ considered the effect of Barnes' deteriorating vision on her ability to work. It is plain that the plaintiff suffers from severe visual impairments. What is not plain is the effect of those impairments on Barnes' ability to work. An ALJ may not arbitrarily pick and choose facts from the medical evidence to support his conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839, 840-841 (11th Cir. 1992). In this case, neither ALJ explains why he failed to consider the medical evidence that suggests that Barnes suffers from visual impairments of cataracts and diminished vision. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). "Failure to do so requires the case be vacated and remanded for the proper consideration." *Hudson v. Heckler,* 755 F.2d 781, 785 (11th Cir. 1985).

Finally, in light of the ALJ's failure to fully and fairly consider the evidence in the record regarding the plaintiff's visual impairments, the court must also conclude that the ALJ failed to properly evaluate all of the plaintiff's severe and non-severe impairments, singly and in combination, to determine whether she is disabled. As a result of their failure to properly consider the plaintiff's visual impairments, doubt is necessarily cast upon either ALJ's

determination that the plaintiff can perform other jobs in the national economy.[5]

**2.     Whether the ALJ erred by relying solely on the Medical Vocational Guidelines (Grids).** The plaintiff alleges that the ALJ erred by relying solely on the grids because she presented evidence of severe, non-exertional impairments.  Exclusive reliance on the grids is appropriate only when a claimant has no non-exertional impairments that significantly limit the claimant's basic work activities. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995); *Sryock v. Heckler*, 764 F.2d 834 (11th Cir. 1985).

> [I]n determining residual functional capacity only exertional  limitations are considered . . . If a claimant has nonexertional impairments that significantly limit the ability to do basic work activities . . . then the grid regulations do not apply. . . . However, when both exertional and nonexertional work impairments exist the grids may still be applicable.   [N]on–exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at a designated level.  Therefore, when both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Courts will review this determination only to determine whether it is supported by substantial evidence.

*Sryock*, 764 F.2d at 836 (internal citations omitted).

Now that the court has concluded that the ALJ failed to properly consider the plaintiff's visual  impairments, it necessarily follows that the ALJ erred as a matter of law

---

[5] A review of the record clearly demonstrates that the first ALJ's hypothetical questions to the vocational expert were improper.  As it is should be apparent from the court's opinion, the ALJ could not possibly have questioned the vocational expert properly.  For example, the ALJ failed to include in his questions to the vocational expert the plaintiff's diminished vision or her cataracts.  On remand, the Commissioner should  insure that the ALJ fulfills his responsibility to include in his questions to the vocational expert, all of the plaintiff's impairments.

by relying solely on the grids and his determinations about Barnes's residual functional capacity to perform work cannot be supported by substantial evidence.

A separate final judgment reversing the Commissioner's decision and remanding this case for further proceedings will be entered.

Done this 29th day of March, 2007.

                                            /s/Charles S. Coody
                                            CHARLES S. COODY
                                            CHIEF UNITED STATES MAGISTRATE JUDGE